

National Corporate Headquarters
8330 LBJ Freeway Suite 220
Dallas, Texas 75243
1 (800) 797-1875
www.americantrades.us

# Client Staffing Agreement

**American Trades Contracting & Consulting, LLC.**, with its principal office located at **8330 LBJ Freeway, Suite 220, Dallas, Texas 75243** ("STAFFING FIRM"), and
Unlimited Contractors _____, with its principal office located at 2709 SE Otis Corley Dr Ste 3 Bentonville, AR 72712 _____ ("CLIENT") agree to the terms and conditions set forth in this Staffing Agreement (the "Agreement").

**STAFFING FIRM**

**1. Duties and Responsibilities**

STAFFING FIRM will

a.  Recruit, screen, interview, hire, and assign its employees ("Assigned Employees") to perform the type of work described and requested by CLIENT under CLIENT's supervision at the locations specified by CLIENT (example of CLIENT job information in the form of Exhibit A).
**Guarantee**
STAFFING FIRM guarantees that the Assigned Employees that STAFFING FIRM recruits and assigns to CLIENT will have the qualifications CLIENT requests. If CLIENT finds any Assigned Employee's qualifications or general work-related behavior lacking and lets STAFFING FIRM know within **8 Hours**, STAFFING FIRM will not charge for the first **4 Hours** of the assignment and will make reasonable efforts to replace the Assigned Employee immediately.
**and will, as the common law employer of Assigned Employees, be responsible for the following;**

b.  Pay Assigned Employees' wages and provide them with the benefits that STAFFING FIRM offers to them;

c.  Pay, withhold, and transmit payroll taxes; provide unemployment insurance and workers' compensation benefits; and handle unemployment and workers' compensation claims involving Assigned Employees;

d.  Require Assigned Employees to sign agreements (in the form of Exhibit B) acknowledging that they are not entitled to holidays, vacations, disability benefits, insurance, pensions, or retirement plans, or any other benefits offered or provided by CLIENT; and

e.  Require Assigned Employees to sign confidentiality agreements (in the form of Exhibit C) before they begin their assignments to CLIENT.

f.  **Comply with federal, state and local labor and employment laws applicable to Assigned Employees, including the Immigration Reform and Control Act of 1986; the Internal Revenue Code ("Code"); the Employee Retirement Income Security Act ("ERISA"); the Health Insurance Portability and Accountability Act ("HIPAA"); the Family Medical Leave Act; Title VII of the Civil Rights Act of 1964; the Americans with Disabilities Act; the Fair Labor Standards Act; the Consolidated Omnibus Budget Reconciliation Act ("COBRA"); the Uniformed**

American Trades Contracting Client Staffing Agreement

**EXHIBIT 3**

Services Employment and Reemployment Rights Act of 1994;and, as set forth in subparagraph g. below, the Patient Protection and Affordable Care Act (ACA).

g. Comply with all provisions of the ACA applicable to Assigned Employees, including the employer shared responsibility provisions relating to the offer of "minimum essential coverage" to "full-time" employees (as those terms are defined in Code §4980H and related regulations) and the applicable employer information reporting provisions under Code §6055 and §6056 and related regulations.

**Staffing Firm Indemnification of Client for Liability under Affordable Care Act**
**STAFFING FIRM shall be solely responsible for, and shall reimburse, indemnify, and hold harmless CLIENT(hereafter collectively referred to as "CLIENT Indemnity") for, any taxes, penalties, or other liabilities assessed against STAFFING FIRM or CLIENT under Code §4980H with respect to Assigned Employees due to STAFFING FIRM's failure to—**

**(i)      Offer "minimum essential coverage" under an "eligible employer-sponsored plan" each within the meaning of Code §5000A(f)(1)(B); or**

**(ii)     Offer coverage that is "affordable" or provides "minimum value," each within the meaning of Code §36B(c)(2)(C) and §4980H(b) and related regulations.**

**Provided, however, that in no event shall CLIENT Indemnity extend to any taxes, penalties, or other liabilities under Code §4980H where such tax, penalty, or other liability results from the imposition of penalties under (i) Code §4980H(a), as a result of the failure by CLIENT to make offers of minimum essential coverage to its employees under an eligible employer-sponsored plan, or (ii) Code §4980H(b) as a result of CLIENT's making an offer of minimum essential coverage to its employees under an eligible employer-sponsored plan that is either unaffordable or fails to provide minimum value.**

**If CLIENT is notified by any government entity of CLIENT's potential liability for any such taxes, penalties, or other liabilities relating to Assigned Employees, STAFFING FIRM shall fully cooperate, at STAFFING FIRM's reasonable expense, with CLIENT's efforts to object to or appeal any such determination of liability or potential liability.**

h.
**Insurance**
STAFFING FIRM will cover STAFFING FIRM's staffing operations for CLIENT with at least the following types and limits of insurance or other coverage:
   a. Workers' compensation benefits or coverage on the Assigned Employees, in amounts no less than required by law
   b. Employer's liability insurance with limits of **$ 1,000,000.00**
   c. Commercial general liability insurance, including personal injury, contractual liability, and property damage, with limits of **$ 1,000,000.00**
   d. Umbrella liability insurance with limits of **$ 5,000,000.00**
   e. Commercial automobile liability insurance with limits of **$ 1,000,000.00** on vehicles owned, leased, or rented by STAFFING FIRM

## 1.2 Right to Control

In addition to STAFFING FIRM'S duties and responsibilities set forth in paragraph 1, STAFFING FIRM, as the common law employer, has the right to physically inspect the work site and work processes; to review and address, unilaterally or in coordination with CLIENT, Assigned Employee work performance issues; and to enforce STAFFING FIRM's employment policies relating to Assigned Employee conduct at the worksite.

## CLIENT

## 2. Duties and Responsibilities

CLIENT will

American Trades Contracting Client Staffing Agreement

a.  Properly supervise Assigned Employees performing its work and be responsible for its business operations, products, services, and intellectual property;

b.  Properly supervise, control, and safeguard its premises, processes, or systems, and not permit Assigned Employees to operate any vehicle or mobile equipment, or entrust them with unattended premises, cash, checks, keys, credit cards, merchandise, confidential or trade secret information, negotiable instruments, or other valuables without STAFFING FIRM's express prior written approval or as strictly required by the job description provided to STAFFING FIRM;

c.  Provide Assigned Employees with a safe work site and provide appropriate information, training, and safety equipment with respect to any hazardous substances or conditions to which they may be exposed at the work site;

d.  Not change Assigned Employees' job duties without STAFFING FIRM's express prior written approval; and

e.  Exclude Assigned Employees from CLIENT's benefit plans, policies, and practices, and not make any offer or promise relating to Assigned Employees' compensation or benefits.

f.  Affirm it is an Equal Employment Opportunity ("EEO") Employer and shall fully comply with any and all applicable anti-discrimination laws, rules and regulations with respect to the Assigned Employee(s).

g.  Affirm CLIENT is primarily responsible for compliance with the Occupational Safety and Health Act ("OSHA") and comparable state laws and regulations thereunder; to the extent those laws apply to Assigned Employee(s) assigned to CLIENT's work site or facility.

**Payment Terms, Bill Rates, and Fees**

3.  CLIENT will pay STAFFING FIRM for its performance at the agreed rates set forth at the time of CLIENT's request for Assigned Employee(s) and will also pay any additional costs or fees set forth in this Agreement. STAFFING FIRM will invoice CLIENT for services provided under this Agreement on a Weekly basis. Payment is due on receipt of invoice. Invoices will be supported by the pertinent time sheets or other agreed system for documenting time worked by the Assigned Employees. CLIENT's signature or other agreed method of approval of the work time submitted for Assigned Employees certifies that the documented hours are correct and authorizes STAFFING FIRM to bill CLIENT for those hours. CLIENT is Solely responsible for authorizing and reporting time of Assigned Employee(s). If a portion of any invoice is disputed, CLIENT will pay the undisputed portion. All disputes associated with Assigned Employees time must be made by CLIENT in writing within 10 days of receipt of invoice or dispute will be considered void and the original invoice amount shall supersede dispute.

**Late Payment Penalty** CLIENT agrees to pay net upon receipt of invoice and to pay interest on any unpaid balances after 30 days from the date of invoice at the compounded rate of 2 % per month or the maximum legal rate, whichever is higher, calculated from the date of receipt.

4.  Assigned Employees are presumed to be nonexempt from laws requiring premium pay for overtime, holiday work, or weekend work. STAFFING FIRM will charge CLIENT special rates for premium work time only when an Assigned Employee's work on assignment to CLIENT, viewed by itself, would legally require premium pay and CLIENT has authorized, directed, or allowed the Assigned Employee to work such premium work time. CLIENT's special billing rate for premium hours will be the same multiple of the regular billing rate as STAFFING FIRM is required to apply to the Assigned Employee's regular pay rate. (For example, when federal law requires 150% of pay for work exceeding 40 hours in a week, CLIENT will be billed at 150% of the regular bill rate.)

5.  If CLIENT uses the services of any Assigned Employee as its direct employee, as an independent contractor, or through any person or firm other than STAFFING FIRM within 90 days after the commencement of any assignment of the Assigned Employee to CLIENT from STAFFING FIRM, CLIENT must notify STAFFING FIRM and (a) continue the Assigned Employee's assignment from STAFFING FIRM for his or her next 720 consecutive work hours for CLIENT; or (b) pay STAFFING FIRM a fee in the amount of 720 times the final billing rate for that Assigned Employee, or $10,000.00, whichever is higher.

American Trades Contracting Client Staffing Agreement

6. In addition to the bill rates specified at the time of request for Assigned Employee(s) by CLIENT to STAFFING FIRM, CLIENT will pay STAFFING FIRM the amount of all new or increased labor costs associated with CLIENT's Assigned Employees that STAFFING FIRM is legally required to pay—such as wages, benefits, payroll taxes, social program contributions, or charges linked to benefit levels—until the parties agree on new bill rates.

**Confidential Information**

7. Both parties may receive information that is proprietary to or confidential to the other party or its affiliated companies and their clients. Both parties agree to hold such information in strict confidence and not to disclose such information to third parties or to use such information for any purpose whatsoever other than performing under this Agreement or as required by law. No knowledge, possession, or use of CLIENT's confidential information will be imputed to STAFFING FIRM as a result of Assigned Employees' access to such information.

**Cooperation**

8. The parties agree to cooperate fully and to provide assistance to the other party in the investigation and resolution of any complaints, claims, actions, or proceedings that may be brought by or that may involve Assigned Employees.

**Indemnification and Limitation of Liability**

9. To the extent permitted by law, STAFFING FIRM will defend, indemnify, and hold CLIENT and its parent, subsidiaries, directors, officers, agents, representatives, and employees harmless from all claims, losses, and liabilities (including reasonable attorneys' fees) to the extent caused by STAFFING FIRM's breach of this Agreement; its failure to discharge its duties and responsibilities set forth in paragraph 1; or the negligence, gross negligence, or willful misconduct of STAFFING FIRM or STAFFING FIRM's officers, employees, or authorized agents in the discharge of those duties and responsibilities.

10. To the extent permitted by law, CLIENT will defend, indemnify, and hold STAFFING FIRM and its parent, subsidiaries, directors, officers, agents, representatives, and employees harmless from all claims, losses, and liabilities (including reasonable attorneys' fees) to the extent caused by CLIENT's breach of this Agreement; its failure to discharge its duties and responsibilities set forth in paragraph 2; or the negligence, gross negligence, or willful misconduct of CLIENT or CLIENT's officers, employees, or authorized agents in the discharge of those duties and responsibilities.

11. Neither party shall be liable for or be required to indemnify the other party for any incidental, consequential, exemplary, special, punitive, or lost profit damages that arise in connection with this Agreement, regardless of the form of action (whether in contract, tort, negligence, strict liability, or otherwise) and regardless of how characterized, even if such party has been advised of the possibility of such damages. In no event shall STAFFING FIRM'S liability exceed, in the aggregate, the amounts paid by CLIENT to STAFFING FIRM hereunder in the 2 month period immediately preceding the event giving rise to the liability.

12. As a condition precedent to indemnification, the party seeking indemnification will inform the other party within 10 business days after it receives notice of any claim, loss, liability, or demand for which it seeks indemnification from the other party; and the party seeking indemnification will cooperate in the investigation and defense of any such matter.

13. The provisions in paragraphs 9 through 13 of this Agreement constitute the complete agreement between the parties with respect to indemnification, and each party waives its right to assert any common-law indemnification or contribution claim against the other party.

**Miscellaneous**

14. Provisions of this Agreement, which by their terms extend beyond the termination or nonrenewal of this Agreement, will remain effective after termination or nonrenewal.

15. No provision of this Agreement may be amended or waived unless agreed to in a writing signed by the parties.

16. Each provision of this Agreement will be considered severable, such that if any one provision or clause conflicts with existing or future applicable law or may not be given full effect because of such law, no other provision that can operate without the conflicting provision or clause will be affected.

17. This Agreement and the exhibits attached to it contain the entire understanding between the parties and supersede all prior agreements and understandings relating to the subject matter of the Agreement.

American Trades Contracting Client Staffing Agreement

18. The provisions of this Agreement will inure to the benefit of and be binding on the parties and their respective representatives, successors, and assigns.

19. The failure of a party to enforce the provisions of this Agreement will not be a waiver of any provision or the right of such party thereafter to enforce each and every provision of this Agreement.

20. CLIENT will not transfer or assign this Agreement without STAFFING FIRM's written consent.

21. Any notice or other communication will be deemed to be properly given only when sent via the United States Postal Service or a nationally recognized courier, addressed as shown on the first page of this Agreement.

22. Neither party will be responsible for failure or delay in performance of this Agreement if the failure or delay is due to labor disputes, strikes, fire, riot, war, terrorism, acts of God, or any other causes beyond the control of the nonperforming party.

**Nature of Relationship**

23. The services that STAFFING FIRM will render to CLIENT under this Agreement will be as an independent contractor. Nothing contained in this Agreement will be construed to create the relationship of principal and agent, or employer and employee, between STAFFING FIRM and CLIENT.

**Term of Agreement**

24. This Agreement will be for a term of 1 year from the first date on which both parties have executed it. This agreement shall automatically renew for another one (1) year term, unless either party provides notice to the other of its intent to terminate this agreement. The Agreement may be terminated by either party upon 30 days written notice to the other party, except that, if a party becomes bankrupt or insolvent, discontinues operations, or fails to make any payments as required by the Agreement, either party may terminate the agreement upon 24 hours written notice.

**Headings**

The headings of the paragraphs of this Agreement are inserted solely for the convenience of reference. They will in no way define, limit, extend, or aid in the construction of the scope, extent, or intent of this Agreement.

**Authorized representatives of the parties have executed this Agreement below to express the parties' agreement to its terms.**

Unlimited Contractors

_____
CLIENT

_Cheyenne Jones_
Signature

Cheyenne Jones
_____
Printed Name

Admin Assistant
_____
Title

9/23/2024
_____
Date

American Trades Contracting & Consulting, LLC
STAFFING FIRM

_____
Signature

Josh Stevens
_____
Printed Name

President / CEO
_____
Title

9/25/2024
_____
Date

American Trades Contracting Client Staffing Agreement

5